# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JERMAINE LOCKHART,**
       **Plaintiff,**

v.               Case No. 17-C-0715

**C.O. SHAWN K. REINKE, and**
**NURSE CAROL A. AL-TAHRAWY,**
       **Defendants.**

---

## DECISION AND ORDER

Plaintiff Jermaine Lockhart is a prisoner in the custody of the State of Wisconsin. In this action under 42 U.S.C. § 1983, he claims that the defendants violated his Eighth Amendment rights by being deliberately indifferent to the risk that he would commit suicide. Before me now are the parties' cross-motions for summary judgment.

## I. BACKGROUND

On February 23, 2016, Lockhart was housed in the restrictive-housing unit at Waupun Correctional Institution. At 1:00 p.m., he pressed his cell's emergency call button. A correctional officer who is not a defendant in this case answered the call. According to Lockhart, he asked this officer if he could have his inhaler, which he needed to control a minor breathing problem. The officer then informed defendant Shawn Reinke, another correctional officer at Waupun, of Lockhart's request. However, according to Reinke, the officer told her that, in addition to his inhaler, Lockhart had requested his naproxen medication. Naproxen is a pain medication that is sold under the brand name Aleve.

Lockhart's inhaler and his naproxen were stored on a medication cart that inmates do not have direct access to. When Reinke arrived at the cart, she reviewed a binder that

is kept on the cart and saw a notation that Lockhart was on a "control all meds" restriction. According to Reinke, she then informed Lockhart that he was on this restriction, but Lockhart insisted that he could have both his inhaler and his naproxen. Lockhart disputes this. According to him, Reinke approached his cell and asked him why he was not allowed to possess his medications in his cell, and Lockhart informed her that the psychological-services unit feared that if he was allowed to keep his medications in his cell he would take them all at one time. (Pl. Prop. Findings of Fact ("PFOF") ¶¶ 7–9.) The parties agree, however, that after seeing the control-all-meds notation and speaking to Lockhart, Reinke called the institution's health-services unit to find out whether Lockhart could have his inhaler and his naproxen in his cell. (Def. PFOF ¶ 11.)

Reinke's call to the health-services unit was answered by defendant Carol Al-Tahrawy, a licensed practical nurse. Reinke asked Al-Tahrawy whether there were any medical restrictions prohibiting Lockhart from receiving his inhaler and his naproxen in his cell. Al-Tahrawy told Reinke that she would look into it and get back to her. The parties agree that control-all-meds restrictions are ordered by the institution physician and that they are normally marked in the medication-profile section or the prescriber's orders section of the inmate's medical chart. (Def. PFOF ¶ 15.) The parties also agree that Al-Tahrawy reviewed these sections of Lockhart's medical chart and did not see a control-all-meds restriction. (*Id.* ¶¶ 13–14.) Al-Tahrawy did not conduct any further review of the plaintiff's medical records. She then called Reinke and informed her that she could not find anything in Lockhart's medical records indicating that he could not have his inhaler or his naproxen in his cell.

Following her discussion with Al-Tahrawy, Reinke returned to Lockhart's cell and told him that a nurse in the health-services unit said that he could have his inhaler and his naproxen in his cell. Lockhart states that he then told Reinke for a second time that he is on a control-all-meds restriction and that if she gave him the naproxen pills he would take them all. (Pl. PFOF ¶ 11.) According to Lockhart, Reinke responded by telling him that he was not on a control-all-meds restriction and then giving him his inhaler and his naproxen. Reinke states that she gave Lockhart a "card" of naproxen. (Reinke Decl. ¶ 18.) Lockhart, in his verified complaint, alleges that Reinke gave him "approximately 88 Naproxen pills." (Compl. ¶ 19.) Reinke denies that Lockhart said that he had any intent to harm himself. But she states that after receiving his medications, Lockhart said, "Good, now I can take these and you can take me out." (Def. PFOF ¶ 29.) Reinke states that she did not interpret this comment as meaning that he would use his medications to attempt suicide.

At some point after giving Lockhart his medications, Reinke informed her supervisors of her interaction with Lockhart. However, she states that she did this not as a precaution to prevent Lockhart from overdosing, but because her interaction with him was outside the scope of her normal daily activities. (Reinke Decl. ¶ 22.)

In his summary-judgment materials, Lockhart states that after Reinke left him with his medications, he counted out 92 pills and began ingesting handfuls of them. (Pl. PFOF ¶ 14.) He would later tell medical providers that he took 58 naproxen pills and 30 simvastatin pills (a cholesterol medication). (Def. PFOF ¶ 32.) (Lockhart does not claim that Reinke gave him any simvastatin pills.)

3

Lockhart states that, about 15 to 20 minutes after taking the pills, he experienced "sudden excruciating pain." (Pl. PFOF ¶ 15.) He pushed the call button in his cell and told the officers who answered that he had taken all of his pills. The officers then brought Lockhart to a "strip cage" where a nurse examined him. (Pl. PFOF ¶ 17.) Eventually, it was determined that because Lockhart claimed to have taken so many pills, he should be taken to the local hospital.

At the hospital, the plaintiff complained of "nausea, burning in stomach, and sensations of weakness." He was given activated charcoal to help prevent absorption of the ingested medications. Lockhart remained in the hospital overnight and was discharged the next day. When he returned to the correctional institution, he was evaluated by the psychological-services unit and was placed in observation status for his safety.

Lockhart now contends that defendants Reinke and Al-Tahrawy violated his Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to the risk that he would harm himself.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

Lockhart's Eighth Amendment claims are based on a failure to prevent harm. Thus, to prevail, he must establish two elements. First, he must show that he was

4

"incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, he must show that each defendant was deliberately indifferent to that risk, meaning that she knew of and disregarded the substantial risk to his health or safety. *Id.* at 837. The defendants contend that Lockhart has not produced evidence from which a reasonable jury could find either of these elements. They also contend that they are entitled to qualified immunity.

The defendants first contend that they are entitled to summary judgment because Lockhart has not shown that either of them subjected him to a substantial risk of serious harm. Lockhart responds by pointing out that his overdose caused him to experience severe stomach pain and nausea and that it left psychological scars. But the question here is not whether Lockhart actually suffered serious harm as a result of taking the quantity of pills that he claims to have taken. *See Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988) (the Eighth Amendment does not require proof of "severe injury"). The question is whether the defendants failed to protect Lockhart from a substantial risk of serious harm. *See, e.g., Farmer*, 511 U.S. at 834. As to that question, it is clear that Lockhart is arguing that the defendants failed to do enough to prevent him from attempting suicide by overdosing on his medications. Suicide is a serious harm, *see, e.g., Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012), and thus if the defendants failed to protect Lockhart from a substantial the risk that he would commit suicide, they would have subjected him to a substantial risk of serious harm.

Of course, to prevail, Lockhart must show that the defendants were aware that their conduct exposed him to a substantial risk of suicide and that they disregarded that risk. *Farmer*, 511 U.S. at 837. Here, Lockhart's evidence comes up short. Nurse Al-

5

Tahrawy's involvement in this case was limited to answering Reinke's question about whether Lockhart was subject to a control-all-meds restriction. It is undisputed that, before she answered this question, Al-Tahrawy reviewed the two places in Lockhart's medical file where such a restriction would have been noted and found none. She then communicated this fact to Reinke. Lockhart contends that Al-Tahrawy should have delved deeper into his medical history to determine whether he may have been suicidal and in need of a control-all-meds restriction. (Pl. PFOF ¶ 6.) However, no evidence in the record suggests that Al-Tahrawy was qualified or authorized to make a determination as to whether Lockhart should be on a control-all-meds restriction. To the contrary, Al-Tahrawy's uncontradicted declaration states that such restrictions are ordered by the institution physician and that she did not have the authority to impose one. (Al-Tahrawy Decl. ¶¶ 12, 20.) Al-Tahrawy acted reasonably in checking to see whether the institution physician had ordered that Lockhart not keep his medications in his cell. Thus, a reasonable jury could not find that Al-Tahrawy engaged in negligent conduct, much less that she exhibited deliberate indifference to the plaintiff's safety. Accordingly, Al-Tahrawy is entitled to summary judgment.

As for Reinke, Lockhart contends that, regardless of what the health-services unit told her, she should not have given him his naproxen pills once he insisted that he was on a control-all-meds restriction and told her that if she gave him the pills he would take them all at once. However, to prove deliberate indifference, Lockhart must show that Reinke completely disregarded a substantial risk that Lockhart would use the pills to commit suicide. *See Farmer*, 511 U.S. at 837. And the very fact that Reinke called the health-services unit to ask if it was safe to give Lockhart his pills defeats the inference

6

that she completely disregarded that risk. Simply put, Reinke took a reasonable precaution before giving the plaintiff his medications and therefore could not have been deliberately indifferent to a substantial risk that he would use them to commit suicide. Perhaps she could have taken additional precautions, but those precautions would not have been required by the Eighth Amendment, as that amendment does not require that prison officials act perfectly or create a cause of action against them for negligence. *See Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018). Accordingly, Reinke is entitled to summary judgment.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (ECF No. 40) is **DENIED.**

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. I cannot extend

this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 20th day of September, 2018.

s/Lynn Adelman
LYNN ADELMAN
U.S. District Judge